UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSHUA R. SCHAFER,
DIANE SCHAFER, and
RICHARD SCHAFER,

        Plaintiffs,

    v.

ALLSTATE INSURANCE
COMPANY, and DOES 1
through 50,

        Defendants.

_____/

NO. CIV. S-08-827 LKK/DAD

O R D E R

    Plaintiffs Richard Schafer and Diane Schafer, together with their son Joshua Schafer, bring this suit against defendant Allstate Insurance Co., regarding defendant's denial of an insurance claim filed by plaintiffs. Pending before the court is defendant's motion for partial summary judgment or adjudication. For the reasons stated below, this motion is granted in part.

## I. BACKGROUND

    The circumstances of the underlying accident are not in dispute. On July 18, 2005, plaintiff Joshua Schafer was a

1

passenger in a vehicle driven by a person not party to this suit. The vehicle was involved in an accident in which no other vehicles were involved.  Plaintiffs allege that the accident resulted from the driver's negligence.  The driver's insurance policy included a liability limit of only $50,000.  However, as a result of the accident, Joshua suffered injuries resulting in damages in excess of this amount.

Plaintiffs allege that an insurance policy issued to them by defendant provided coverage for these excess damages, which defendant refused to pay.  Plaintiffs bring claims for breach of contract, insurance bad faith, and intentional infliction of emotional distress.  Defendant's primary argument is that at the time of the accident, the only policy that would have provided applicable coverage had lapsed due to non-payment of the premium. Defendant nonetheless concedes that in this case, the question of whether the policy had lapsed is a question of fact not resolvable on a motion for summary judgment.  Defendant's present motion argues, however, that the circumstances relating to the potential lapse demonstrate that defendant reasonably believed that the policy had lapsed, and that this reasonable belief provides a defense to the bad faith and infliction of emotional distress claims.  The court therefore reviews the evidence regarding plaintiffs' initial policies, regarding the potential cancellation, and the parties' actions subsequent to the accident.

**A.    Plaintiffs' Initial Policies**

On March 22, 2005 (four months before the accident),

plaintiffs Richard and Diane Schafer purchased two insurance policies from defendant.[1] These policies were apparently purchased from an Allstate office in Rocklin, California or Auburn, California.

The first of these policies, policy number 9 14 725690 03/18, was an "auto policy of insurance," issued March 22, 2005, to be effective March 18 2005 to Sept. 18, 2005. This policy included coverage for uninsured and underinsured motorists, which the parties refer to as "UM/UIM" coverage.

The second policy purchased by plaintiffs was an "umbrella policy of insurance," policy number 9 14 733390 3/23. The parties agree that this policy does not include UM/UIM coverage.[2] Plaintiffs were not orally informed that this policy excluded UM/UIM coverage, although Diane Schafer did receive a copy of the policy, which contained these exclusions. As an "umbrella" policy, this policy provides excess coverage as a supplement to other forms of insurance. Richard and Diane Schafer testified that in

---

[1] Plaintiffs also purchased a home insurance policy from defendant, although the parties have not specified the date at which this policy was acquired. This policy is not at issue in the present motion.

[2] Defendant laudably divided the proposed undisputed facts into separate sections dealing with each of plaintiffs' claims. However, rather than sequentially numbering all purported undisputed facts, defendant restarted the numbering with each section. This practice complicates citation to the undisputed facts without providing any perceptible countervailing benefit, and counsel are discouraged from adopting this approach in the future. Plaintiffs' approach, with separate sections but uniform numbering, illustrates a better practice. In light of this awkwardness, the court omits citations to the record when the facts are undisputed.

discussing the purchase of this policy with defendant's employees, they understood that the effect of the policy was that in the event Joshua Schafer caused an accident, the policy would extend coverage that would prevent third parties from attaching plaintiffs' home. The policy includes a section titled "Required Underlying Insurance," which provides that

> You must maintain the required underlying insurance. . . . If you fail to maintain the required underlying insurance applicable to the occurrence, there will be no coverage for any insured person under this policy until the damages exceed the required underlying insurance limit for that exposure. If the underlying insurance applicable to the occurrence does not provide at least the limits indicated under the required underlying insurance section of this policy, you will be responsible for the damages up to the required underlying insurance amounts.

Umbrella Policy, B-14. The parties disagree as to whether the effect of this provision is to require cancellation of the umbrella insurance policy if the underlying insurance is cancelled.

Neither of these policies included a provision providing for formal arbitration of coverage disputes.

**B. Potential Cancellation of Plaintiffs' Auto Policy**

On May 31, 2005, defendant mailed a notice to plaintiffs indicating that plaintiffs were behind in payments on the auto policy. Campos Decl., Ex. H. The notice stated that the outstanding balance was $582.05, and that the minimum amount due was $392.70. The notice further stated that if the minimum payment was not received on June 17, 2005, the policy would be cancelled on June 18, 2005. The parties agree that plaintiffs actually

1  received this notice.

2      The parties disagree as to whether plaintiffs paid the
3  premium.  Plaintiffs maintain that on Saturday, June 11, 2005,
4  Richard Schafer hand delivered a check for $392.70 by sliding it
5  through the mail slot of one of defendant's offices.  Deposition
6  of Richard Schafer, 30; Campos Decl. Ex L-25.  That office received
7  payments from insureds in this manner approximately four times per
8  week.  Rolfe Decl. Ex. 4 (Hoffman Depo., 26:12-22).  However,
9  Richard's check was never deposited.  Richard never took action to
10 confirm that it had been received.[3]  Plaintiffs separately assert
11 that payment was nonetheless received, basing this assertion on one
12 of defendant's internal balance sheets, which includes an item on
13 the policy reflecting "-$578.54" on June 28, 2005.  Plaintiffs
14 assert that this balance sheet item represents a payment of $578.54
15 toward the auto policy's premium.  However, in contrast with
16 plaintiffs' testimony regarding delivery of the undeposited check
17 for $392.70, plaintiffs have not provided any evidence indicating
18 a possible source of a $578.54 payment.  Defendant argues that the
19 balance sheet entry indicates a write-off of the loss caused by
20 cancellation of the delinquent policy.  See Aff. of Jeffery Thomes
21 Supp. Mot. Summ. J., ¶ 3.  Defendant supports this interpretation
22 by noting that other balance sheet items, which uncontrovertedly

23

24      [3] In addition, the carbon copy of this check appears out-of-
   order in plaintiffs' register.  Defendant relies on this and other
25 facts to argue that this check was never actually delivered;
   however, on defendant's motion for summary judgment, the court
26 credits plaintiffs' evidence and testimony.

do represent payments, are expressed as positive, rather than negative, numbers.

When policies are delinquent, defendant's ordinary practice is to phone policyholders whose policies are in danger of cancellation.[4] Rolfe Decl., Ex. 4 (Deposition of Kelleen Hoffman, 31:9-11, 36:9-18); Pls.' DF 38, 39. In the time between the notice of impending cancellation and the accident, plaintiffs did not receive any such call, or any notice that the auto insurance policy had actually been cancelled. Depo. of Richard Schafer, 60:11-12. Plaintiffs further argue that defendant acts inconsistently in responding to non-payment of premiums. Defendant does not always cancel policies where the policyholder is delinquent, and sometimes retroactively reinstates policies once a delinquent payment is made. See Rolfe Decl. Ex. 6.

Finally, plaintiffs identify several actions which they argue are inconsistent with cancellation of plaintiffs' auto insurance policy. Plaintiffs argue that had defendant terminated plaintiffs' auto insurance policy, defendant also would have terminated the umbrella policy for failure to maintain separate underlying insurance. In addition, plaintiffs later acquired a separate auto policy from a separate insurer, and plaintiffs allege that this insurer determined that plaintiffs had coverage for the period from June 7, 2005 through July 31, 2005. Decl. of Richard Schafer, 2,

---

[4] This practice apparently represents a courtesy performed by defendants' local office, but in light of the parties' silence regarding relationship between particular deponents and defendant, the court cannot be sure.

Ex. 14-15.

**C.   Second Auto Insurance Policy**

Plaintiffs notified defendant of the July 18, 2005 accident within 48 hours.  At some time thereafter, defendant's employee Kelleen Hoffman informed plaintiff Diane Shafer that the auto policy had been cancelled prior to the accident.  Suppl. Campos Decl., Ex. N (Hoffman Depo., 60:1-14).  No evidence indicates that plaintiffs were aware of the cancellation of their policy prior to that time.  On July 30, 2005, plaintiffs purchased a new auto insurance policy from defendant.  Plaintiff Diane Schafer gave defendant's employee Kelleen Hoffman a check for $600 as payment for this policy.  Campos Decl., Ex. L-18.  This policy received a separate number, No. 9 14 910990, and took effect July 31, 2005.

Plaintiffs' willingness to enter a new policy is somewhat at odds with their contention that the old policy had never been cancelled.  However, it does not appear that this act is utterly unexplainable, and on defendant's motion for summary judgment, the court interprets the available evidence in the light most favorable to plaintiffs.

**D.   Plaintiffs' Insurance Claims**

As noted above, plaintiffs notified defendant of the accident no later than July 19, 2005.  On December 6, 2006, plaintiffs sent a letter informing defendant that plaintiffs had concluded an action against the driver of the vehicle, securing recovery of the driver's insurance policy limit of $50,000.  The letter then notified defendant that plaintiffs would seek payment under their

underinsured motorist coverage.  Rolfe Decl., Ex. 7; Compl. ¶ 11.
On February 15, 2007, plaintiffs formally demanded payment of
underinsured motorist benefits, or in the alternative, referral of
the matter to arbitration.  Compl. ¶ 11.  Defendant forwarded the
February 15, 2007 letter to outside counsel for evaluation.

On March 27, 2007, defendant responded by sending plaintiffs
a letter denying coverage, based on the policy's lapse.  This
letter explained that "the policy was not in effect at the time of
the accident.  Although we understand the Schafers contend that
they did not receive the Cancellation Notice, we have seen no
indication that they paid the premium necessary to keep the
coverage in place beyond June 18, 2005, or that they contend they
did so."[5]  Campos Decl., Ex. D, 2.  The letter further states that,
in responding to plaintiffs' demand, defendant produced a copy of
the May 30, 2005 cancellation notice as the basis for cancellation.
The letter concludes by stating that "If you believe Allstate has
unfairly denied Josh's insurance claim, in whole or in part, you
are welcome to provide us with any additional information or legal
authority that you believe would support a contrary conclusion."
The letter also informs plaintiffs that they may file a complaint
with the California Department of Insurance.

Plaintiffs responded on April 17, 2007.  Plaintiffs requested
"documentation of the premium payments that were made by the

---

[5] Although Schafers apparently contended, in March 2007, that
they did not receive this cancellation notice, they now state that
they did receive it.

1  Schafers and a showing that some amount was owing which was not
2  paid and resulted in cancellation of the policy, along with proof
3  that notice of cancellation was given to the insureds."  Rolfe
4  Decl., Ex. 8.  This letter did not affirmatively claim that
5  plaintiffs were current on their payments or mention the purported
6  June 11, 2005 check made in response to receipt of the notice of
7  cancellation.

8      Defendant responded by letter of April 30, 2007, stating that
9  such documentation would be produced.  However, plaintiffs assert
10  that such documentation had not provided by March 25, 2008, when
11  plaintiffs filed the instant suit.

12  **II. STANDARD FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56**

13      Summary judgment is appropriate when it is demonstrated that
14  there exists no genuine issue as to any material fact, and that the
15  moving party is entitled to judgment as a matter of law.  Fed. R.
16  Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157
17  (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467
18  (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr
19  v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th
20  Cir. 1984).

21      Under summary judgment practice, the moving party

22          [A]lways bears the initial responsibility of
            informing the district court of the basis for
23          its motion, and identifying those portions of
            "the pleadings, depositions, answers to
24          interrogatories, and admissions on file,
            together with the affidavits, if any," which
25          it believes demonstrate the absence of a
            genuine issue of material fact.
26

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 455 U.S. 951 (1980).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

10

support of its contention that the dispute exists.  Rule 56(e);
_Matsushita_, 475 U.S. at 586 n.11; _First Nat'l Bank_, 391 U.S. at
289; _Strong v. France_, 474 F.2d 747, 749 (9th Cir. 1973).  The
opposing party must demonstrate that the fact in contention is
material, i.e., a fact that might affect the outcome of the suit
under the governing law, _Anderson v. Liberty Lobby, Inc._, 477 U.S.
242, 248 (1986); _T.W. Elec. Serv., Inc. v. Pacific Elec._
_Contractors Ass'n_, 809 F.2d 626, 630 (9th Cir. 1987), and that the
dispute is genuine, i.e., the evidence is such that a reasonable
jury could return a verdict for the nonmoving party, _Anderson_, 242
U.S. 248-49; _Wool v. Tandem Computers, Inc._, 818 F.2d 1433, 1436
(9th Cir. 1987).

In the endeavor to establish the existence of a factual
dispute, the opposing party need not establish a material issue of
fact conclusively in its favor.  It is sufficient that "the claimed
factual dispute be shown to require a jury or judge to resolve the
parties' differing versions of the truth at trial."  _First Nat'l_
_Bank_, 391 U.S. at 290; _T.W. Elec. Serv._, 809 F.2d at 631.  Thus,
the "purpose of summary judgment is to 'pierce the pleadings and
to assess the proof in order to see whether there is a genuine need
for trial.'"  _Matsushita_, 475 U.S. at 587 (quoting Fed. R. Civ. P.
56(e) advisory committee's note on 1963 amendments); _International_
_Union of Bricklayers v. Martin Jaska, Inc._, 752 F.2d 1401, 1405
(9th Cir. 1985).

In resolving the summary judgment motion, the court examines
the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any.  Rule
56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d
1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party
is to be believed, Anderson, 477 U.S. at 255, and all reasonable
inferences that may be drawn from the facts placed before the court
must be drawn in favor of the opposing party, Matsushita, 475 U.S.
at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655
(1962) (per curiam)); Abramson v. University of Hawaii, 594 F.2d
202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn
out of the air, and it is the opposing party's obligation to
produce a factual predicate from which the inference may be drawn.
Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.
Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party
"must do more than simply show that there is some metaphysical
doubt as to the material facts. . . . Where the record taken as a
whole could not lead a rational trier of fact to find for the
nonmoving party, there is no 'genuine issue for trial.'"
Matsushita, 475 U.S. at 587 (citation omitted).

### III. ANALYSIS

Plaintiffs' complaint enumerates five causes of action: a
claim for breach of contract, a claim for insurance bad faith, and
separate claims for intentional infliction of emotional distress
as to plaintiffs Joshua Schafer, Diane Schafer, and Richard
Schafer, respectively.  Defendant seeks summary adjudication to
narrow the issues in the first claim, and summary judgment as to

12

the remaining claims.  The court addresses each claim in turn.

**A.   Breach of Contract**

Plaintiffs' complaint alleges that defendant breached the plaintiffs' auto insurance policy and umbrella policy by denying plaintiffs' claim for underinsured motorist coverage and by refusing to refer the matter to arbitration.  Compl. ¶ 13.

Defendant seeks to narrow the issues presented by this claim in two ways.  First, defendant argues that the umbrella policy did not provide for underinsured motorist coverage, such that refusal to pay a claim seeking such coverage could not have been a breach of the umbrella policy.  Plaintiffs agree that the umbrella policy does not provide UM/UIM coverage.  Accordingly, defendant's motion is granted in this regard.  Second, defendant argues that the California Supreme Court's decision in <u>Bouton v. USAA Cas. Ins. Co.</u>, 43 Cal. 4th 1190 (2008) confirms that defendant was only statutorily required to arbitrate the issues of liability and damages.  <u>See</u> <u>Bouton</u>, 43 Cal. 4th at 1201 (interpreting Cal. Ins. Code § 11580.2(f)).  There is no statutory obligation to submit any other issue to arbitration, and the policies at issue here do not impose any contractual obligation to do so.  Plaintiffs agree that <u>Bouton</u>, which was decided after plaintiffs complaint was filed, precludes finding that defendant's refusal to arbitrate was a breach of contract.  Accordingly, defendant's motion is granted in this regard as well.

What remains of plaintiffs' breach of contract claim is the claim that by refusing to pay an underinsured motorist benefit,

defendant breached the auto insurance policy. Defendant argues that this policy had lapsed, such that it imposed no obligations on defendant at the time of the accident, but defendant concedes that questions of fact remain as to this issue.

**B.   Insurance Bad Faith**

Plaintiffs' second claim is for insurance bad faith. Under California law, "insurance bad faith" refers to a breach of the implied covenant of good faith and fair dealing as that covenant applies to insurance policies. An insurer breaches this covenant when it acts unreasonably in discharging its obligations under the policy. See <u>Crisci v. Security Ins. Co. of New Haven, Conn.</u>, 66 Cal. 2d 425, 430 (1967). Although a claim for breach of the implied covenant of good faith and fair dealing generally sounds in contract, in the insurance context, such a claim also sounds in tort. <u>Jonathan Neil & Assoc. v. Jones</u>, 33 Cal. 4th 917, 932 (2004). Here, plaintiffs implicitly seek to pursue this claim as a tort, since they seek more than contract damages. <u>See, e.g.</u>, <u>Mission Ins. Group v. Merco Const. Engineers</u>, 147 Cal. App. 3d 1059, 1065 (1985).

To establish a claim that an insurer breached this covenant, a plaintiff must show that (1) benefits due under the policy were withheld, and (2) the withholding was unreasonable or without proper cause. <u>Dalrymple v. United Servs. Auto. Ass'n</u>, 40 Cal. App. 4th 497, 512 (1995) (quoting <u>Love v. Fire Ins. Exch.</u>, 221 Cal. App. 3d 1136, 1151-52 (1990)); <u>see also</u> <u>Waller v. Truck Ins. Exchange, Inc.</u>, 11 Cal. 4th 1, 35 (1995). "An insurer that unreasonably

delays, or fails to pay, benefits due under the policy may be held liable in tort for breach of the implied covenant." Rappaport-Scott v. Interinsurance Exchange of the Automobile Club, 146 Cal. App. 4th 831, 837 (2007). Thus, if an unreasonable breach of the policy is shown, no separate conduct, distinct from the breach, need be established.

Here, plaintiffs' complaint enumerates four acts that allegedly constituted insurance bad faith. Because of plaintiffs' unresolved breach of contract claim, for most of these acts, there remains a question of material fact as to whether benefits due under the policy have been withheld and/or delayed. Nonetheless, defendant's motion argues that summary judgment is appropriate as to these theories because the withholding effectuated by these acts, if any, was reasonable. The court therefore reviews the standards for determining reasonableness in an insurance bad faith claim. The court then turns to plaintiffs' individual theories, applying the appropriate reasonableness standard to each.

## 1. Reasonableness for Purposes of Insurance Bad Faith

Defendant in this case seeks to establish that any withholding of benefits was reasonable under two theories. The first is by showing that a genuine dispute exists regarding the insured's claim. "[A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." Chateau Chamberay

1   Homeowners Ass'n v. Associated Internat. Ins. Co., 90 Cal. App. 4th

2   335, 347 (2001) (citing Fraley v. Allstate Ins. Co., 81 Cal. App.

3   4th 1282, 1297 (2000)). The reasonableness of the insurer's

4   decision, and thus the existence of a genuine dispute, must be

5   evaluated from the perspective of the insurer at the time the

6   decision was made. Id. Where "there is no dispute as to the

7   underlying facts (e.g., what the parties did and said), then the

8   trial court can determine, as a matter of law, whether such dispute

9   is 'genuine.'" Id. at 348 n.7 (emphasis in original). "[A]n

10   insurer is entitled to summary judgment based on a genuine dispute

11   over coverage or the value of the insured's claim only where the

12   summary judgment record demonstrates the absence of triable issues

13   as to whether the disputed position upon which the insurer denied

14   the claim was reached reasonably and in good faith." Wilson v.

15   21st Century Ins. Co., 42 Cal. 4th 713, 724 (2007) (internal

16   citation omitted). Conversely, an insurer's motion for summary

17   judgment based on the existence of a genuine dispute must be denied

18   where a jury could find that the insurer lacked a reasonable

19   factual basis for its conclusion or that the insurer unfairly

20   ignored contrary evidence. Id. at 724. Thus, when there is

21   conflicting evidence about the facts perceived by the insurer at

22   the time of its actions, those facts must be determined by a jury

23   before the trial court can make a judgment as to whether those

24   facts give rise to a reasonable dispute. Dalrymple v. United

25   Servs. Auto. Ass'n, 40 Cal. App. 4th 497, 504, 516 (1995).

26       Even absent a genuine dispute, an insurer's conduct may be

16

reasonable if the insurer reasonably and in good faith relied upon the advice of counsel. <u>State Farm Mut. Auto. Ins. Co. v. Superior Court (Kinsey)</u>, 228 Cal. App. 3d 721, 726 (1991) (citing <u>Bertero v. National General Corp.</u>, 13 Cal.3d 43, 53-54 (1974)). California courts have analogized this defense to the defense of reliance on counsel in malicious prosecution cases. <u>Id.</u> This defense need not be specifically alleged in an answer. <u>Id.</u> at 727. An insurer seeking to raise this defense must show that it made a full disclosure of the facts to counsel, that it actually relied upon counsel's advice, and that it did not have reason to know that the action recommended by counsel was improper. <u>Melorich Builders, Inc. v. Superior Court</u>, 160 Cal. App. 3d. 931, 936-37 (1984) (elements of reliance on advice of counsel as a defense to claim for intentional infliction of emotional distress); <u>see also</u> <u>Aetna Casualty & Surety Co. v. Superior Court</u>, 153 Cal. App. 3d 467, 475 (1984) (in insurance bad faith claim, to use this defense, insurer must actually rely on advice of counsel).

**2.   Actions Alleged to Constitute Insurance Bad Faith**

Plaintiffs' complaint alleges that defendant violated the implied covenant of good faith and fair dealing by (a) denying plaintiffs' claim; (b) failing to conduct an adequate investigation of plaintiffs' claim; (c) refusing to submit the claim to arbitration; and (d) refusing to provide plaintiffs with documentation they requested regarding their claim.[6]

---

[6]   In their opposition to the present motion, plaintiffs identified three additional types of actions that plaintiffs allege

### a.  Denial of Plaintiffs' Claim

Plaintiffs' primary allegation is that defendant "unreasonably denied coverage." Compl. ¶ 20. Defendant argues that its decision to deny coverage was reasonable because, at most, there was a genuine dispute as to whether the policy had lapsed.[7] As explained above, this court may grant summary judgment on this issue only where a jury could not conclude that facts available to the defendant rendered defendant's position unreasonable. <u>Wilson</u>, 42 Cal. 4th at 724. Here, the facts available to defendant rendered defendant's position reasonable.  Until plaintiff Richard Schafer was deposed in October of 2008, six months after this suit was filed, plaintiffs had provided no mention of the purported June 11, 2005 payment made through defendant's mail slot.  The fact that

---

constituted bad faith: (1) failing to orally inform plaintiffs that the umbrella policy did not provide UM/UIM coverage at the time the umbrella policy was purchased, (2) failing to adopt a consistent practice regarding cancellation of policies for non-payment; and (3) improperly notifying plaintiffs once the policy had been cancelled.  At oral argument, plaintiffs agreed that the first of these additional theories lacked merit.  As to the remaining two theories, plaintiffs have not sought to amend their complaint to include these theories, and the complaint contains no indication that plaintiffs allege that this conduct constituted bad faith. Accordingly, the court declines to address these theories.

[7] Thus, this issue is in an abstract way the inverse of the normal summary judgment standard: whereas a party seeking summary judgment must normally show the <u>absence</u> of a dispute as to material facts, here, defendant argues that the <u>presence</u> of a dispute as to facts surrounding lapse at the time the claim was denied demonstrates that defendant's conduct was reasonable, and therefore entitles defendant to summary judgment.  This discrepancy exists only at an abstract level: defendant argues that there is no dispute as to the material facts, i.e., what defendant knew, and that these facts demonstrate a genuine dispute as to the facts' consequences.

defendant never deposited this check indicates that defendant was not otherwise aware that the check had been delivered, and no other evidence indicates otherwise. Plaintiffs contend that some other evidence indicates that the premium was paid or that the policy was not cancelled, notably the June 30, 2005 entry on defendant's balance sheet and defendant's potential statement to plaintiffs' subsequent insurer that plaintiffs were covered. However, even if a jury concluded that defendant was aware of this evidence, a jury could not conclude that defendant's position was unreasonable. Accordingly, there was a genuine dispute as to this issue, and defendant's denial of coverage does not support a claim for insurance bad faith.

### b. Failure to Investigate

Plaintiffs' next argument is that defendant "failed to properly and timely investigate [Plaintiff's] uninsured/ underinsured motorist claim." Compl. ¶ 22. Insurers have an obligation to investigate all claims, and the adequacy of the investigation is evaluated in light of the "totality of the circumstances." Wilson, 42 Cal. 4th at 723. Even if some evidence supports the insurer's position, an insurer may act unreasonably if it ignores other evidence available to it which supports the insured's claim. Id. at 721. Thus, in Wilson, the California Supreme Court held that the insured raised a triable issue of fact as to the insurer's reasonableness where the insurer chose to discount or ignore the evidence presented by the insured's medical expert without investigating this evidence. Id. at 721-22.

1    Here, plaintiffs argue that defendant should have conducted
2   a more thorough investigation into whether plaintiffs' policy had
3   lapsed. However, plaintiffs have not identified any evidence that
4   was presented to defendant that indicated that the policy had not
5   lapsed yet which defendant failed to investigate. When plaintiffs
6   presented their claim in early 2007, defendant called their
7   attention to the May 2005 cancellation notice, yet plaintiffs did
8   not indicate that any payment was made in response to that notice
9   until October 2008. The mere assertion that defendant should have
10  done more to investigate plaintiffs' past payment, without
11  identification of any particular evidence that defendant should
12  have investigated, cannot show that defendant acted unreasonably.

13              **c.    Refusal to Arbitrate Coverage**

14      Plaintiffs also argue that defendant "unreasonably refused to
15  . . . submit to a binding arbitration hearing for a determination
16  of the rights and benefits owed to Plaintiffs under the subject
17  automobile policy." Compl. ¶ 23. As discussed above, the parties
18  now agree that defendant was not under a statutory or contractual
19  duty to submit the instant dispute to arbitration. Because the
20  refusal to arbitrate did not deprive plaintiffs of any benefits due
21  to them under the policy, this refusal was not bad faith.
22  Dalrymple, 40 Cal. App. 4th at 515.

23              **d.    Refusal to Provide Documentation**

24      Plaintiffs further allege that defendant acted in bad faith
25  by refusing to provide requested documentation relating to the
26  purported cancellation of plaintiffs' auto insurance policy.

                                  20

Compl. ¶ 20.  On April 27, 2007, plaintiffs requested "documentation of the premium payments that were made by the Schafers and a showing that some amount was owing which was not paid and resulted in cancellation of the policy, along with proof that notice of cancellation was given to the insureds."  Rolfe Decl., Ex. 8.  Plaintiffs filed suit nearly a year later without having received this information.

Defendant does not specifically address this allegation in its memoranda supporting the instant motion.  Nor do defendant's general arguments regarding a genuine dispute as to coverage or defendant's reliance on counsel speak to defendant's conduct regarding provision of documents after the claim was filed.  Although plaintiffs provide scant authority in support of this theory of liability, on defendant's motion for summary judgment, the burden is on defendant to show that claim cannot proceed.  Defendant has not attempted to satisfy this burden, and accordingly, the motion for summary judgment must be denied as to this issue.

### 3.  Summary on Insurance Bad Faith Claims

Defendant's motion for summary judgment of plaintiffs' insurance bad faith claim is granted insofar as that claim is premised on defendant's refusal to pay underinsured motorist benefits, defendant's failure to investigate plaintiffs' claim, and refusal to submit to arbitration.  The motion is denied insofar as plaintiffs' bad faith claim is premised on defendant's failure to provide documentation relating to denial of plaintiffs' claim.

1    Defendant's motion is further granted as to the theories of
2  bad faith liability appearing for the first time in plaintiffs'
3  opposition to the present motion: a non-uniform practice of policy
4  cancellations, and communication relating to policy cancellation.
5  Finally, plaintiffs have agreed to abandon their claim for bad
6  faith based on failure to verbally inform plaintiffs at the time
7  of purchase that the umbrella policy did not include UM/UIM
8  coverage.

9  **C.    Intentional Infliction of Emotional Distress.**

10   Under California Law, the elements of a claim for intentional
11 infliction of emotional distress are "(1) extreme and outrageous
12 conduct by the defendant with the intention of causing, or reckless
13 disregard of the probability of causing, emotional distress; (2)
14 the plaintiff's suffering severe or extreme emotional distress; and
15 (3) actual and proximate causation of the emotional distress by the
16 defendant's outrageous conduct." Davidson v. City of Westminster,
17 32 Cal. 3d 197, 209 (1982); see also Christensen v. Superior Court,
18 54 Cal. 3d 868, 903 (1991).[8]

19   In opposing the present motion, plaintiffs correctly state
20 that when an insurer's breach of the implied covenant of good faith
21 and fair dealing--i.e., insurance bad faith--causes financial loss

22
23       [8] Defendant states that plaintiffs have not established the
   additional elements necessary for a claim under Dillon v. Legg, 68
   Cal.2d 728 (1968). Dillon concerned negligent, rather than
24 intentional, infliction of emotional distress, and the limits
   adopted by Dillon and its progeny do not apply to intentional
25 torts. Bird v. Saenz, 28 Cal. 4th 910, 915 (2002) (quoting Thing
   v. La Chusa, 48 Cal. 3d 644, 667-668 (1989)); Thing, 48 Cal. 3d at
26 651-61 (discussing Dillon and related cases).

to the insured, emotional distress damages are recoverable. <u>Waters</u> <u>v. United Services Auto. Assn.</u>, 41 Cal. App. 4th 1063, 1079 (1996), <u>Betts v. Allstate Ins. Co.</u>, 154 Cal. App. 3d 688, 718 (1984). Plaintiffs do not discuss the separate tort of intentional infliction of emotional distress. Accordingly, there appears to be little dispute here. Rather, it appears that plaintiffs do not intend to bring a distinct claim for intentional infliction of emotional distress, and defendant has not argued that emotional distress damages are unavailable as to plaintiffs' insurance bad faith claims.

Nonetheless, even if plaintiffs did intend to bring separate claims for intentional infliction of emotional distress, as indicated by their complaint, defendant's motion for summary judgment would be proper as to these claims. Plaintiffs have not provided any evidence that would support the conclusion that defendant's acts were so "extreme and outrageous" as to support a claim for intentional infliction of emotional distress. <u>See</u> Compl. ¶¶ 28, 34, 40 (alleged tortious conduct was denial of claims and refusal to arbitrate). "Conduct, to be outrageous, must be so extreme as to exceed all bounds of that usually tolerated by civilized society." <u>Huntingdon Life Sciences, Inc. v. Stop</u> <u>Huntingdon Animal Cruelty USA, Inc.</u>, 129 Cal. App. 4th 1228, 1259 (2005) (internal quotations omitted). The alleged conduct does not rise to this level. However, the "extreme and outrageous" requirement does not inherently apply to a claim for emotional damages arising out of an insurance bad faith claim. <u>Gourley v.</u>

State Farm Mut. Auto. Ins. Co., 53 Cal. 3d 121, 128 (1991), Waters v. United Servs. Auto. Ass'n, 41 Cal. App. 4th 1063, 1073 (1996) (citing Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 579 (1973)).

**D.  Punitive Damages**

Finally, defendant seeks adjudication of plaintiffs' request for punitive damages.  Defendant merely recites the California standard for an award of punitive damages and then states that plaintiffs have not submitted evidence satisfying this standard.

Because plaintiffs bear the burden of showing entitlement to punitive damages at trial, defendant may move for summary judgment based solely on plaintiffs' lack of evidence that might satisfy this burden.  To show entitlement to punitive damages, plaintiffs must provide "some evidence . . . that is inconsistent with the hypothesis that the tortious conduct was the result of mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such non-inquitous human failing."  Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th 1269, 1288 (1994). Although plaintiffs allege that defendant "willfully caused injury to the Plaintiffs by denying their right to receive underinsured motorist benefits," Opp'n at 16, plaintiff have provided no evidence of the type identified by Tomaselli.  Accordingly, defendant's motion for summary judgment is granted on this issue.

## IV. CONCLUSION

For the reasons stated above, defendant's motion is GRANTED IN PART.  Specifically, defendant's motion is GRANTED as to:

24

1.  Plaintiffs' first claim, for breach of contract, insofar as this claim is premised on breach of the umbrella policy or failure to submit claims to arbitration.

2.  Plaintiffs' second claim, for insurance bad faith, insofar as this claim is premised on:

    a.  refusal to pay plaintiffs' claim

    b.  failure to investigate plaintiffs' claim

    c.  refusal to submit to arbitration

    d.  failure to inform plaintiffs that the umbrella policy did not include UM/UIM coverage

    e.  failure to adopt a uniform cancellation policy

    f.  failure to provide notice of cancellation

3.  Plaintiffs' third, fourth, and fifth claims, for intentional infliction of emotional distress.

4.  Plaintiffs' request for punitive damages.

Defendant's motion is DENIED as to:

1.  Plaintiffs' second claim, for insurance bad faith, insofar as this claim is premised on failure to provide documentation of the plaintiffs' payments and the insurer's cancellation of the auto liability policy.

IT IS SO ORDERED.

DATED:  May 26, 2009.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT